# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In Re: Consolidated Appeals of<br>Chester-Upland School District<br>and Chichester School District<br>from the Decisions of the<br>Board of Assessment Appeals<br>of Delaware County, Pennsylvania<br>for Various Tax Years and<br>Various Real Properties<br><br>Appeal of: Chichester School District<br>and Chester Upland School District | :<br>:<br>:<br>:<br>: No. 633 C.D. 2017<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| In Re: Consolidated Appeals of<br>Chester-Upland School District<br>from The Decisions of The<br>Board of Assessment Appeals<br>of Delaware County, Pennsylvania<br>for Various Tax Years and<br>Various Real Properties<br><br>Appeal of: Chichester School District | :<br>:<br>:<br>: No. 732 C.D. 2017<br>:<br>:<br>:<br>:<br>: |
| In Re: Consolidated Appeals of<br>Chester-Upland School District, et. al.<br>from the Decisions of the Board of<br>Assessment Appeals of Delaware<br>County, Pennsylvania for Various<br>Years and Various Real Estate<br>Properties<br><br>Appeal of: Chester-Upland School<br>District | :<br>:<br>:<br>: No. 740 C.D. 2017<br>: Argued: June 7, 2018<br>:<br>:<br>:<br>:<br>: |

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                                    **FILED:  December 27, 2018**

Before this Court are the appeals of Chester-Upland School District and Chichester School District (collectively, Appellants) from an April 27, 2017 order of the Court of Common Pleas of Delaware County (Trial Court).  In the order, the Trial Court ruled that Appellants may not consider the presence of an outdoor advertising sign on a property when determining its fair market value for the purposes of a real estate tax assessment.  For the reasons set forth below, we vacate the Trial Court's order and remand for further proceedings.

This appeal requires that we interpret the exclusion from taxation for outdoor advertising signs and their support structures that is set forth in Section 8811(b)(4) of the Consolidated County Assessment Law (CCAL), 53 Pa. C.S. § 8811(b)(4).[1]  The CCAL governs the assessment of real estate taxes for counties of the Second Class A, including Delaware County, and counties of the Third through Eighth Class.  53 Pa. C.S. § 8801(b)(1).  Section 8811 is divided into two subsections

---

[1] The interpretation of a statute is a question of law, and therefore our standard of review is *de novo* and our scope of review is plenary.  *Department of Transportation, Bureau of Driver Licensing v. Weaver*, 912 A.2d 259, 261 (Pa. 2006).  In matters involving the interpretation of a statute, we apply the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1991, which provides that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."  1 Pa. C.S. § 1921(a); *see also Weaver*, 912 A.2d at 264.  In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage."  1 Pa. C.S. § 1903(a).  The clearest indication of legislative intent is generally the plain language of the statute.  *Doe v. Franklin County*, 174 A.3d 593, 605 (Pa. 2017).  "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."  1 Pa. C.S. § 1921(b); *see also Weaver*, 912 A.2d at 264.  It is only when the text of a statutory provision is ambiguous that we will attempt to ascertain legislative intent.  1 Pa. C.S. § 1921(c); *Chanceford Aviation Properties, L.L.P. v. Chanceford Township Board of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007).

that define what property is to be assessed and taxed and what forms of property are to be omitted from an assessment. Subsection (a) of Section 8811 establishes that real estate is a subject of taxation, which includes "land, lots of ground, ground rents," and buildings situated on the real estate. 53 Pa. C.S. § 8811(a). Subsection (b), on the other hand, sets forth several "exceptions" from taxation for specific kinds of property, including signs and sign structures; machinery, tools, appliances and equipment in a mill, mine, manufactory or industrial establishment; silos and other structures related to the storage of animal feed and structures related to the storage of animal waste or composting; amusement park rides; wind turbine generators and related wind energy appliances and equipment; and high tunnels. 53 Pa. C.S. § 8811(b). The exclusion for signs and sign structures appears in paragraph (b)(4) of Section 8811, which provides that:

> No sign or sign structure primarily used to support or display a sign shall be assessed as real property by a county for purposes of the taxation of real property by the county or a political subdivision located within the county or by a municipality located within the county authorized to assess real property for purposes of taxation, regardless of whether the sign or sign structure has become affixed to the real estate.

53 Pa. C.S. § 8811(b)(4). This exclusion has not previously been addressed in the appellate court decisions of this Commonwealth.

The underlying actions in the Trial Court consist of 26 appeals of real estate tax assessment determinations by the Delaware County Board of Assessment Appeals (Delaware County Board) and the City of Chester Board of Revision of Taxes and Appeals (City of Chester Board) concerning assessments for the 2015 and 2016 tax years for properties contained within either the Chester-Upland School District or the Chichester School District. Each of the 26 properties at issue in these

3

appeals (subject properties) contains an outdoor advertising sign. Pursuant to a stipulation of the parties, the Trial Court consolidated the 26 appeals to consider the common threshold legal issue of "whether a taxing authority can use the presence of an outdoor advertising sign to increase the real property tax basis" of the property. (Trial Court Stipulation ¶¶1, 3, Reproduced Record (R.R.) 13a; Trial Court Orders dated April 4, 2016, January 17, 2017 and April 7, 2017, R.R. 24a-27a, 74a-81a.) Appellants argued before the Trial Court that the assessments of the 26 subject properties should be increased in order to account for revenue that the property owners realized through ground leases or grants of easements to outdoor advertising companies that erected and operated a billboard on the properties.

> In its April 27, 2017 order, the Trial Court ruled that
>
> a taxing authority may NOT use the presence or existence of an outdoor advertising sign thereon to increase a property's real estate tax basis or assessment based upon a claim of increased fair market value determined by the cost, income, comparable sales and/or any other valuation approach.

(R.R. 120a.) In the order, the Trial Court also affirmed the decisions in the 22 assessment appeals where Appellants' requests to increase the assessment had been rejected by the Delaware County Board, and reversed the 2 Delaware County Board and 2 City of Chester Board decisions that had ruled in favor of Appellants and reassessed the properties. (R.R. 120a-124a.) In its later opinion in support of the order, the Trial Court concluded that the exclusion from taxation for signs and their support structures in Section 8811(b)(4) of the CCAL, 53 Pa. C.S. § 8811(b)(4), prevented the existence of an outdoor advertising sign on a property from being considered in any manner to raise that property's real estate tax basis. The Trial Court stated that, contrary to Appellants' arguments, the taxation of land, lots and

4

ground rents pursuant to Section 8811(a) does not override the General Assembly's clear exclusion for signs and sign structures set forth in Section 8811(b)(4). (July 18, 2017 Trial Court Opinion at 25-26.)

On May 10, 2017, the Trial Court issued an order amending its April 27, 2017 order to include the statement specified in Section 702(b) of the Judicial Code, 42 Pa. C.S. § 702(b), to allow an interlocutory appeal by permission. (R.R. 130a.) Appellants filed a joint notice of appeal of the Trial Court's April 27, 2017 order as amended by the May 10, 2017 order, and later filed separate petitions for permission to appeal the Trial Court orders. On July 6, 2017, this Court entered an order granting the petitions for permission to appeal, stating the question to be considered by the Court on appeal as "Whether a property's fair market value for assessment purposes may include revenue generated from billboard leases, rents or easements?" On July 20, 2017, this Court entered an order consolidating the three appeals.

In their appeals, Appellants acknowledge that a billboard and the structure that supports it are not to be considered as part of an assessment of property pursuant to Section 8811(b)(4). Nevertheless, Appellants argue that the sign-and-sign-structure exclusion does not preclude assessment of the land on which a billboard sits and the consideration of income derived from a lease of that land for the purpose of erecting and operating a billboard. Rather, Appellants assert that Section 8811(b)(4) clearly and unambiguously only exempts the signs and sign structures and does not exempt the land underneath the signs. Appellants argue that the Trial Court's order denying any use of the "presence" of billboards on the subject properties in arriving at an assessment negates any consideration of the revenues that a property owner could realize through a ground lease or grant of an easement to an

5

outdoor advertising operator. Thus, according to Appellants, the Trial Court's order not only denies the existence of the physical billboard, but also denies any consideration of the effect of a billboard lease on the fair market value of the property. Appellants contend that the order accordingly conflicts with precedent concerning assessments under the CCAL, which requires consideration of all of a property's potential uses and the property's ability to generate income, including revenues derived from long-term leases on the land.

Under the CCAL, the starting point for determining the valuation of real property for tax assessment purposes is that the property must be assessed at its "actual value." *Harley-Davidson Motor Co. v. Springettsbury Township*, 124 A.3d 270, 279 (Pa. 2015); *see also* 53 Pa. C.S. § 8842. The actual value is a parcel's fair market value, which has been defined as "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Harley-Davidson*, 124 A.3d at 279 (quoting *F & M Schaeffer Brewing Co. v. Lehigh County Board of Appeals*, 610 A.2d 1, 3 (Pa. 1992) (plurality)); *see also Tech One Associates v. Board of Property Assessments, Appeals and Review of Allegheny County*, 53 A.3d 685, 700 (Pa. 2012). The actual or fair market value is determined by competent witnesses as to what the property is worth on the market at a fair sale. *Harley-Davidson*, 124 A.3d at 279; *Allegheny Energy Supply Co., LLC v. County of Greene, Board of Assessment Appeals*, 869 A.2d 31, 33-34 (Pa. Cmwlth. 2005) (*en banc*). The CCAL sets forth three approaches that must be consulted in arriving at a valuation: (i) the cost approach, based on reproduction or replacement cost of a property less depreciation and obsolescence; (ii) the comparable sales approach, relying on sales of properties with similar characteristics; and (iii) the

6

income approach, which divides a subject property's annual net rental income by an investment rate of return. 53 Pa. C.S. § 8842(b); *Harley-Davidson*, 124 A.3d at 279; *Aetna Life Insurance Co. v. Montgomery County Board of Assessment Appeals*, 111 A.3d 267, 278 (Pa. Cmwlth. 2015). A trial court has discretion to decide which method of valuation is most appropriate and applicable to a given property. *Aetna Life Insurance*, 111 A.3d at 278; *Allegheny Energy Supply*, 869 A.2d at 34.

When determining fair market value, the property tax assessment "must include *all* relevant factors having a bearing on that value." *Harley-Davidson*, 124 A.3d at 283 (emphasis in original). The assessment must include "the *entire* property and not merely its constituent elements." *Tech One Associates*, 53 A.3d at 700 (quoting *North Park Village, Inc. v. Board of Property Assessments, Appeals and Review of Allegheny County*, 184 A.2d 253, 255 (Pa. 1962)) (emphasis in original). In addition, the property must be valued based on its current condition even where an appraiser asserts that the highest and best use of the property is different from the current use and would require alteration to the property, such as subdivision of the land. *Harley-Davidson*, 124 A.3d at 280-81; *Craftmaster Manufacturing, Inc. v. Bradford County Board of Assessment Appeals*, 903 A.2d 620, 631-33 (Pa. Cmwlth. 2006). As our Supreme Court has explained, the "ways in which a property hypothetically could be used by potential buyers are properly considered by an expert in evaluating what a willing buyer would pay for a property; however, the subject property should not be valued as though it were already in that hypothetical condition." *Harley-Davidson*, 124 A.3d at 280.

However, while a property must be valued based on the current condition of the land, the property may not be valued based solely on its current use. Instead, in *Schaeffer Brewing*, the Supreme Court held that property must be valued

7

according to its objective fair market value in the marketplace or "value-in-exchange" rather than its unique, subjective value to a particular owner, or "value-in-use." 610 A.2d at 3-4. Thus, in that decision, the Court determined that the valuation of a property containing a large commercial brewery calculated using a replacement cost valuation approach was improper because the valuation was based on a "hypothetical model production plant" using only the facility's barrel-per-year output "without any pretense of replicating the same physical characteristics of the actual real estate being assessed." *Id*. at 5. Though only a plurality decision,[2] this Court has followed *Schaeffer Brewing* in cases such as *Hershey Entertainment and Resorts Co. v. Dauphin County Board of Assessment Appeals*, 874 A.2d 702 (Pa. Cmwlth. 2005), where we held that Dauphin County improperly valued Hershey Park and Zoo America based on the value-in-use to the operator of these parks where the valuation was derived from the revenue earned from sales of tickets, food and souvenirs; this Court noted that the county's approach was "impermissibly based upon the *productivity* of" the business enterprises which would lead to the value of the real estate fluctuating from year to year based on attendance and concession sales at the park. *Id*. at 707-10 (emphasis in original); *cf. In re Appeal of V.V.P. Partnership*, 647 A.2d 990, 992-93 (Pa. Cmwlth. 1994) (valuation of a racquet sport facility using the income method based on actual receipts and expenses of facility was not an improper value-in-use because severe limitations on the property's viability as an investment property, including zoning and site factors, meant that the current use was the only conceivable one).

---

[2] In *Harley-Davidson*, the Supreme Court noted that *Schaeffer Brewing* is a non-precedential plurality decision and that a majority of the Court had not endorsed the holding that a property's value-in-use is not to be considered in assessing a property. 124 A.3d at 279 & n.6.

Additionally, when real estate is subject to a long-term lease, the portions of the property subject to a leasehold interest cannot be disregarded in valuing the property. *Tech One Associates*, 53 A.3d at 698 n.25, 703. Rather, the "economic reality" of the lease must be considered in establishing the market value of the property. *Id*. at 703; *In re Appeal of Marple Springfield Center, Inc.*, 607 A.2d 708, 710 (Pa. 1992). Accordingly, in *Tech One Associates*, our Supreme Court held that an appraisal expert appropriately determined that the rent paid under a long-term lease by the property owner to a shopping center operator could be included in the valuation of the property, in addition to and separate from the valuation of the buildings built by the lessee. *Tech One Associates*, 53 A.3d at 701-03. The Court held that "when the property generates income [through the lease], the capitalization of income approach[3] is an appropriate method to use to ascertain its value, and, in applying that method, the contract rent received under the lease is the relevant income stream which is to be capitalized, even if it is below prevailing market rental rates." *Id.* at 703; *see also Marple Springfield Center*, 607 A.2d at 710.

In light of the above principles, we conclude that the Trial Court erroneously interpreted the sign-and-sign-structure exclusion of Section 8811(b)(4) to foreclose any consideration of any potential income that a property owner may receive from the placement of a billboard on the property in arriving at a fair market value assessment. Section 8811(b)(4) unambiguously states that a taxing authority must not treat the value of a sign or its support structure as part of the real property subject to taxation in the assessment of the property. As our Supreme Court has

---

[3] "Broadly defined, an 'income capitalization approach' to valuation is '[a] set of procedures through which an appraiser derives a value indication for an income-producing property by converting its anticipated benefits (cash flows and reversion) into property value.'" *Tech One Associates*, 53 A.3d at 698 n.9 (quoting *The Dictionary of Real Estate Appraisal* 143 (4th ed. 2002)).

9

explained with respect to the machinery exclusion of Section 8811(b)(1), the purpose of the exclusions is to move into a separate class of non-taxable property what would have been classified as taxable real estate under Section 8811(a) absent the exclusion. *Jones and Laughlin Tax Assessment Case*, 175 A.2d 856, 861 (Pa. 1961). However, there is no justification in the text of Section 8811 for the Trial Court's holding that a valuation of the real property cannot consider the effect of a lease of the property to a billboard operator or the property's suitability for a billboard use due to its location, zoning designation or other characteristic when arriving at the fair market value of the property. Rather, as applicable caselaw instructs, the valuation must consider "*all* [of the] relevant factors having a bearing on" a property's fair market value, including the "ways in which a property hypothetically could be used by potential buyers." *Harley-Davidson*, 124 A.3d at 280, 283 (emphasis in original). In addition, pursuant to *Tech One Associates*, the appraiser must consider the "economic reality" of a long-term lease on a property that provides revenue to the property owner where appropriate. 53 A.3d at 703. Section 8811(b)(4), like the other exclusions of that subsection, plainly requires by its text only that the physical billboard sign and the structure that supports the signs be excluded from the valuation, but this provision does not have any effect on a taxing authority's valuation of the land and other non-excluded or non-exempt taxable real estate situated on that land. Nor does the Section 8811(b)(4) exclusion alter the traditional methods of valuation set forth in the CCAL or the foundational principles of valuation set forth in our caselaw.

10

Taxpayers[4] argue that the Trial Court's interpretation of Section 8811(b)(4) was proper because factoring in the amount of rent paid by billboard operators to property owners pursuant to leases or easements into a property's fair market value would value the property to the specific property owner based on its current use, in violation of the "value-in-use" concept described in *Schaeffer Brewing* and decisions of this Court. Taxpayers argue that Appellants' proposed method of valuation that would account for revenue earned by the property owner from leases or easements for billboards would be an improper "value-in-use" valuation that would reflect the value of the business activity conducted on the subject properties, which is entirely derived from the excluded non-taxable sign and sign structure.

In addition, Taxpayers argue that Appellants' proposed methods of valuation would indirectly value the billboards themselves in violation of the Section 8811(b)(4) exclusion. Taxpayers find support for this argument in our Supreme Court's decision in *Schaeffer Brewing* where the Court explained that:

> The machinery and equipment exclusion clearly evidences a legislative intent and public policy to promote a favorable business climate in Pennsylvania by providing tax relief for Pennsylvania industries. In view of this public policy consideration, it is not sufficient only to exclude machinery and equipment from direct inclusion in the assessable real estate valuation. To give the exclusion proper effect, the assessed value of industrial real estate must not, in any way, reflect consideration of the value of the machinery and equipment. Otherwise, a subtle–but no

---

[4] A group of appellees, including property owners and lessees of the subject properties and holders of easement interests in the properties with responsibility for payment of the real estate taxes, filed a joint brief. Several other appellees joined in the joint brief. In addition, appellee Beit Jala, Inc., the owner of one of the subject properties, filed a separate brief in support of the Trial Court's order. For ease of reference, appellees are collectively referred to as "Taxpayers" in this opinion.

> less real–assessment of machinery and equipment will result.

610 A.2d at 6-7 (citation omitted). Taxpayers argue that, as in *Schaeffer Brewing*, the amount of rent paid here by billboard operators to the property owners pursuant to leases or easements necessarily "reflect consideration" of the billboards and that taxing the rent that is paid by the operators will operate as "a subtle–but no less real– assessment" on the billboards themselves, which is contrary to Section 8811(b)(4).

Taxpayers raise valid concerns that must be accounted for in any valuation of property on which a billboard sits. We agree that an appraiser must not indirectly value an existing billboard on a property by, for example, considering the revenue generated from the number of advertisements that are placed on that billboard in a given year. However, in this appeal we are only called upon to address the question of whether the revenue that a property owner receives pursuant to a lease or easement for the purpose of erecting a billboard may be considered in a fair market value property assessment. Thus, we conclude only that a property's suitability to a billboard use and income earned by the property owner from the rental of the property to a billboard operator are not excluded from a fair market valuation by Section 8811(b)(4) and that the property should be valued consistent with the general principles of valuation described above. Issues concerning the valuation of any of the individual subject properties are not presently before this Court.

Finally, Taxpayers contend that Section 8811(b) must be interpreted in favor of property owners and against an extension of the property that is subject to assessment because exclusions from taxation are to be strictly construed against the taxing authority with doubts resolved in favor of the taxpayer. *See, e.g., Crawford*

12

*Central School District v. Commonwealth*, 888 A.2d 616, 620 (Pa. 2005).[5] However, the doctrine of strict construction of a statute in favor of a party applies only where there is reasonable doubt regarding the meaning of the provision. *See Tech One Associates*, 53 A.3d at 696; *BFC Hardwoods, Inc. v. Board of Assessment Appeals of Crawford County*, 771 A.2d 759, 763 n.5 (Pa. 2001). Here, there is no doubt that the text of Section 8811(b)(4) applies only to exclude the valuation of an advertising sign or its sign structure and does not otherwise prohibit the valuation of land according to the CCAL and applicable caselaw.

Accordingly, we conclude that the Trial Court's April 27, 2017 order was in error. The Trial Court's order is vacated, and we remand this matter to the Trial Court for further proceedings consistent with this opinion regarding the assessment appeals on the individual subject properties.[6]

**JAMES GARDNER COLINS, Senior Judge**

Judge Fizzano Cannon did not participate in the decision for this case.

---

[5] Appellants argue that the "exceptions" from taxation listed in Section 8811(b) of the CCAL are in fact exemptions from taxation, which are required to be construed against the taxpayer. 1 Pa. C.S. § 1928(b)(5); *Crawford Central*, 888 A.2d at 620. However, our Supreme Court has expressly held that the prior version of the machinery and equipment provision, which now appears in Section 8811(b)(1), is in fact an exclusion from taxation and not an exemption. *See BFC Hardwoods, Inc. v. Board of Assessment Appeals of Crawford County*, 771 A.2d 759, 763 & n.5 (Pa. 2001) (holding that machinery, tools appliances and equipment exception of the Fourth to Eighth Class County Assessment Law was in fact an exclusion and not an exemption and therefore this provision was required to be strictly construed against Commonwealth); *see also Jones and Laughlin Tax Assessment Case*, 175 A.2d at 862.

[6] As we resolve this appeal in Appellants' favor, we need not address their argument that the Trial Court's order would violate the Uniformity Clause of the Pennsylvania Constitution and the Equal Protection Clause of the United States Constitution.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In Re: Consolidated Appeals of<br>Chester-Upland School District<br>and Chichester School District<br>from the Decisions of the<br>Board of Assessment Appeals<br>of Delaware County, Pennsylvania<br>for Various Tax Years and<br>Various Real Properties | :<br>:<br>:<br>:<br>: No. 633 C.D. 2017<br>:<br>:<br>:<br>: |
| Appeal of: Chichester School District<br>and Chester Upland School District | :<br>: |
| | |
| In Re: Consolidated Appeals of<br>Chester-Upland School District<br>from The Decisions of The<br>Board of Assessment Appeals<br>of Delaware County, Pennsylvania<br>for Various Tax Years and<br>Various Real Properties | :<br>:<br>:<br>: No. 732 C.D. 2017<br>:<br>:<br>:<br>: |
| Appeal of: Chichester School District | : |
| | |
| In Re: Consolidated Appeals of<br>Chester-Upland School District, et. al.<br>from the Decisions of the Board of<br>Assessment Appeals of Delaware<br>County, Pennsylvania for Various<br>Years and Various Real Estate<br>Properties | :<br>:<br>: No. 740 C.D. 2017<br>:<br>:<br>:<br>: |
| Appeal of: Chester-Upland School<br>District | :<br>: |

# ORDER

AND NOW, this 27th day of December, 2018, the order of the Court of Common Pleas of Delaware County is VACATED, and this matter is REMANDED for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____

**JAMES GARDNER COLINS, Senior Judge**